[L. A. No. 1082.    Department Two.—November 8, 1902.]

WESLEY GRIJALVA, by his Guardian ad Litem, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

NEGLIGENCE—PLACING INEXPERIENCED SERVANT IN DANGEROUS POSITION —ORDER OF FOREMAN—SUPPORT OF VERDICT.—In an action to secure damages for personal injuries to the plaintiff, as an inexperienced minor servant of the defendant, resulting from his being placed ·

in a dangerous position, by order of defendant's foreman, where
the only question is as to whether the foreman gave such order,
and the evidence is substantially conflicting upon that question, a
verdict for the plaintiff will not be disturbed.

ID.—ASSISTANCE IN LACING BROKEN BELT—EVIDENCE—FORMER OCCUR-
RENCE.—Where the plaintiff's injury was sustained while rendering
assistance to an experienced person in lacing a broken belt, upon
moving machinery, the evidence of another witness who assisted
the same person upon a former occasion as to the way in which such
person then laced the belt, and what warning he gave him, was
properly rejected as immaterial, and not binding upon the plaintiff.

ID.—INSTRUCTION—SAFE PLACE FOR WORK—JURY NOT MISLED.—Where
there was no issue as to the character of the place where the servant
was at work, and the answer admits that it was a dangerous place,
and that the work was dangerous, the jury could not be misled by
an instruction that "it is the duty of the employer to furnish a
suitable and safe place for his employees to work," though not
designating the place as "reasonably" suitable and safe.

APPEAL from a judgment of the Superior Court of Kern
County and from an order denying a new trial.   J. W.
Mahon, Judge.

The facts are stated in the opinion of the court.

P.. W. Bennett, J. W. Ahern, and P. F. Dunne, for Ap-
pellant.

Charles G. Lamberson, and S. C. Smith, for Respondent.

THE COURT.—Action to recover damages for personal
injury. The case was tried before the court with a jury, and
a verdict rendered for the plaintiff, upon which judgment was
entered. A motion for a new trial was made by defendant
and denied. This appeal is from the judgment and order
denying a new trial.

At the time of the injury plaintiff was a minor, of the age
of about sixteen years. He had been working in the machine-
shop of defendant as employee continuously for about three
weeks. His business was to run the machine called a nut-
tapper and a machine called a snubber, the one machine was
used to make the threads on the inside of nuts, and the other
to round off the ends of bolts. The machinery used by plain-
tiff was operated by shafts and belting. There was a main

shaft in the machine-shop, near to and extending along the side of the building, which was reached by a platform some fifteen feet above the floor, on which was placed the machinery operated by plaintiff. This main shaft was made to revolve by steam-power from a stationary engine. About the same height from the floor, and twenty-five feet distant from the main shaft, was a counter-shaft running parallel with the main shaft. The power from the main shaft was communicated by belts and pulleys to the counter-shaft. The machines operated by plaintiff were under the counter-shaft, and the power to run them obtained by means of a pulley on the counter-shaft and a belt therefrom to and around the machine-wheel below. The belt which communicated the power from the main shaft to the counter-shaft broke, and therefore the machinery operated by plaintiff stopped. This belt had to be laced or fastened together at the ends, and it was during the lacing of this belt that the plaintiff was injured. One Turner, a fellow-servant, was sent by defendant's foreman to lace the belt. He went up on the platform under the main shaft, with the ends of the belt in his hands, and while there plaintiff went up to where Turner was to assist in lacing the belt. Just as he reached the place where Turner was on the platform, and was reaching up to take hold of the belt, both plaintiff and Turner were caught on the main shaft and were, by the rapid revolutions of the shaft, wound up with belting and an iron water-pipe and severely injured. Plaintiff's right arm was so badly crushed that it had to be amputated, and his right knee was dislocated. He was taken to the hospital and suffered much pain. This leads us to the points discussed by appellant as grounds for a reversal of the order.

1. It is seriously contended that the evidence is insufficient to show that defendant's foreman, Wineow, ordered plaintiff on the platform to assist Turner in lacing the belt. The plaintiff claims that defendant is liable, for the reason that its foreman sent him, an inexperienced minor, into a dangerous place to do dangerous work, without knowledge on plaintiff's part of the danger involved. The answer admits that the place "was a dangerous position for an unskillful or inexperienced person, and was well known to be so by said foreman; and that the said work that the plaintiff alleges that he was ordered to perform, in assisting in mending and repairing

the said belt, was dangerous work for an unskillful or inexperienced person, which said danger was well known to said foreman in said shop''; but it denies that the foreman ever sent or ordered plaintiff into the place or to do the work alleged, or that the danger was not known to the plaintiff. The question as to defendant's liability is thus made to depend mainly upon the question as to whether or not its foreman ordered plaintiff into the place of danger. The jury, by the verdict, has found in favor of the plaintiff upon the issue, and the evidence is sufficient to sustain the implied finding.

Plaintiff testified that after the foreman sent Turner up on the platform to lace the belt, that he was standing by his machine, and "Mr. Turner called to me to come up, and Mr. Wineow [the foreman], who was standing about three or four feet from me, said I had better go up and help him.'' This testimony is in direct conflict with that of the foreman and of other witnesses, whose testimony tended to show that the foreman had not gone near to plaintiff's machine, and was not nearer to plaintiff than fifty feet at the time the plaintiff says he was standing three or four feet from him. But the plaintiff is not otherwise impeached, and while the evidence is not clear and convincing, the jury had the right to believe it. Not only this, but the plaintiff's father testified that after the injury, in a conversation, the foreman said to him: "I had n't the least idea in the world that anything would happen when I sent them boys up there." The foreman denied that he ever made such statement; but, again, we are not passing upon the truth of the conflicting statements. It is said that plaintiff, in a written statement to Drs. Huntington and Taggart, made no mention of the foreman having ordered him to the place of danger, but that he said that Turner called him to the place. While this is a circumstance tending to discredit the evidence of plaintiff, it is not conclusive. He said nothing about the foreman in this statement. The statement was prepared by the physicians who were in the employ of defendant. It was presented to plaintiff while he was suffering and under charge of the physicians in the hospital. Plaintiff was requested to sign it. We cannot say that a statement signed by plaintiff under such circumstances, although somewhat inconsistent with his evidence upon the trial, is conclusive upon him.

It is said that the evidence shows that plaintiff never entered upon the execution of the order to assist in lacing the belt. That after he went up to the dangerous place where Turner was at work upon the belt, and before he had taken hold of the belt or commenced to assist Turner he was caught by the shaft. Hence, it is argued that there is no causal connection between the negligence and plaintiff's injury. It is a complete refutation of defendant's contention in this regard, that its answer "admits that, while engaged in such dangerous work, in the dangerous position alleged in said amended complaint, the said plaintiff, Wesley Grijalva, was suddenly caught by the said machinery, or the machinery then in motion, and hurled violently about, and was badly crushed and bruised."

Not only this, but we think that plaintiff, when "reaching up to hold the belt," had really commenced to assist Turner, even if he never got hold of the belt.

2. The defendant called one Breuch as a witness, who testified that before the accident happened he was on the platform with Turner upon an occasion when Turner was lacing belts. Then defendant's counsel asked the witness the following question: "Q. At that time, state in what way Turner laced the belt, and what warning, if any, you gave him."

The court sustained the plaintiff's objection to this question, and it is claimed that such ruling was error. The ruling was clearly correct as the question was put. What Turner had done upon a former occasion was in no way material, nor was it binding upon plaintiff. It appears from the argument of counsel to the court below, and his statement, that he desired to prove that it was the habit of Turner to habitually lace the belting while the machinery was in motion and to put in the lacing before he put the belt over the shaft. The only object of such proof was to show that it was the negligence of Turner that caused the injury.

Here, again, we have the statement in defendant's answer that the foreman "directed one Abe Turner, a fellow-servant of this plaintiff, and a skillful and experienced person, to go into said position and perform said work, and thereafter the said plaintiff voluntarily, and in disregard of the warning and caution of the said foreman, and without his knowledge or consent, ascended to said dangerous position and engaged

in assisting his said fellow-servant, Abe Turner, in said dangerous work of mending and repairing said belt.'' If defendant had been allowed to prove that Turner was habitually negligent, in the face of this allegation that he was ''a skillful and experienced person,'' it would only make the case against it stronger. If the foreman ordered plaintiff into a place of danger, and also to assist a man who was habitually careless in doing the work which plaintiff was ordered to assist in, it makes the culpability of defendant much greater. It not only would show that the place was a place of danger, and that the work was dangerous work, but that it was dangerous to assist a negligent man in doing the work.

3. Error is claimed in the instruction of the court that ''It is the duty of the employer to furnish a suitable and safe place for his employees to work.'' The claim is made that the rule is, that the place must be *reasonably* suitable and safe. We do not think the instruction misled the jury. It stated the law as laid down by this court in *Mullin* v. *California Horseshoe Co.,* 105 Cal. 83. And there was no issue made by pleadings as to the character of the place, as the answer admits that it was a dangerous place and that the work was dangerous.

Other instructions are criticised, but we find no error in the giving or refusing any instruction that would justify a reversal. The court, in the instructions as a whole, appears to have fully and fairly stated the law to the jury.

There was no error in other rulings complained of.

The judgment and order are affirmed.

Hearing in Bank denied.